ALFRED M. HESTON, CUSTODIAN, &c., PROSECUTOR, v. STATE BOARD OF EDUCATION AND BOARD OF EDUCATION OF ATLANTIC CITY, RESPONDENTS.

Submitted December 21, 1915—Decided July 26, 1916.

Under section 76 of the act relating to schools (*Comp. Stat., p.* 4746), the custodian of school funds, who has on hand balances derived from the sale of school bonds authorized to be issued and which were issued for the purchase of land and the erection of school buildings, cannot be lawfully directed by the board of education to transfer such balances to the building and repair account and thus subjected to be used for repair of school buildings, &c. Since the statute makes no provision permitting such use of the unexpended balances, the general principle of law that a fund raised for a specific purpose cannot be applied to any other purpose applies, and the order of the board of education to make any use of the fund other than for the specific purpose for which it was raised is *ultra vires.*

On *certiorari*.

Before Justices PARKER, MINTURN and KALISCH.

For the prosecutor, *Theo. W. Schimpf*.

For the respondent, *James H. Hayes*.

The opinion of the court was delivered by

KALISCH, J.    On this review the question presented is whether under section 76 of the act relating to schools (*Comp. Stat., p.* 4746) the custodian of school funds, who has on hand balances derived from the sale of school bonds authorized to be issued and which were issued for the purchase of land and the erection of school buildings, can be lawfully directed by the board of education to transfer such balances to the building and repair account and thus subject such balances to be used for repair of school buildings, &c. Section 76 provides that whenever a city board of education decides that it is necessary to raise money for the purchase of lands for school purposes or for erecting, enlarging, repairing or furnishing a school house or school houses, it shall prepare and deliver to each member of the board of school estimate of such school district, a statement of the amount of money estimated to be necessary for such purpose or purposes, and that the board of estimate shall then fix and determine the amount necessary therefor and shall make two certificates of such amount, one of which shall be delivered to the board of education and the other to the common council, board of finance or other body in the city having the power to make appropriations of money raised by tax in such city. When that has been done the common council, board of finance or other body may appropriate such sum or sums for such purpose or purposes in the same manner as other appropriations are made by it. The section then further provides, as one of the methods by which funds may be raised to meet the appropriations, for the issuance of "school bonds" and further requires that the proceeds of sale of such bonds shall be de-

posited with the custodian of school moneys of such district and shall be paid out only on the warrants or orders of the board of education.

It was under this section that the board of school estimate of Atlantic City certified three amounts to the common council of that city as needed to build three different new schools. The common council made the necessary appropriations for the purposes required and issued bonds and raised the money. The schools were built and in each case there was an unexpended balance. The unexpended balances aggregate $8,-360.40. The board of education of Atlantic City, by resolution, directed the predecessor of the prosecutor, the former being at that time the custodian of the school funds, to transfer and deposit the bond balance to the credit of the "building and repair account of the school district," in accordance with the opinion of the assistant commissioner of education, which was as follows: "It is ordered that the respondent transfer to the building and repair account the balances now in his hands from the sale of the school bonds issued for the purchase of land and the erection of buildings for the Massachusetts Avenue School, the Richmond Avenue School and the Texas Avenue School."

The then custodian of the school funds refused to comply with the order and appealed to the state board of education, which board affirmed the order of the commissioner of education. The order above recited, made by the board of education, cannot be sustained upon fundamental legal grounds. The appropriations made by the common council were for the distinct purpose of purchasing land and erecting three school buildings. This was the object as stated by the board of education to the board of estimate, and it was upon the certificates presented to the common council by the board of estimate, as to the estimated cost of the parcels of land to be purchased and the schools to be erected, that the common council acted and made the appropriations and authorized the issuance of the school bonds. Of course, it was not to be expected that the estimated cost would be the exact cost. That there might be an unexpended balance was something

that was probable and reasonably to be anticipated. But the fact that there is an unexpended balance remaining cannot have the legal effect of empowering the board of education to divert any part of such appropriation from its original design, unless there is some statutory authority permitting it. The statute makes no provision permitting the use of the unexpended balance for repairs and therefore the order of the board of education to transfer the unexpended balance to the "building and repair account of the school district" is *ultra vires.*

In *Hoboken* v. *Phinney,* 29 *N. J. L.* 65 (on *p.* 67), Mr. Justice Haines said: "Upon general principles of law, a fund raised for a specific purpose and placed in the hands of an officer for such specific purpose, cannot lawfully be applied to any other. Any such other appropriation would be a violation of the trust, and so contrary to the law." Although the case cited was one where the township committee expended for other purposes than those of education the money raised or appropriated for a school, the legal principle stated therein is applicable to the situation presented here.

That it was the intention of the legislature, under section 76, to restrict the board of education to use the appropriations for the specific purposes for which they were obtained, is to be gathered from the case of *Lambertville* v. *State Board of Education,* 87 *N. J. L.* 196, where the Court of Errors and Appeals, speaking through Mr. Justice Swayze, says: "Moreover, although section 76 does not in terms require an itemized statement, it requires the board of education to deliver to each member of the board of estimate a statement of the amount of money estimated to be necessary for the purpose or purposes. The obvious intent was to enable the board of estimate to act intelligently in fixing and determining the amount necessary for such purpose or purposes. It would be quite impossible for the board of estimate to act intelligently upon a certificate which included in a lump sum the amount necessary for purchase of land and erecting a new school house, and the amount necessary for repairs to existing school houses. An appropriation made in that way would

490    NEW JERSEY SUPREME COURT.

Kells Mill & Lumber Co. v. Penna. R. R. Co.    89 N. J. L.

put it in the power of the board of education to expend the whole appropriation for repairs."

The same principle is to be extracted from *Loudenslager* v. *Atlantic City*, 80 *N. J. L.* 658. We have deemed it unnecessary to consider the other points made and relied on by the prosecutor in his brief, because we have reached the result that the order made by the board of education and affirmed by the state board of education was without warrant in law, and, therefore, should be set aside.